# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1882, IN THE SIXTY-SEVENTH YEAR OF THE STATE.

No. 8691.

### Erskine v. Whitehead, Executor, et al.

CHARITABLE USES. — *Will.* — *Construction.* — *Cy pres Power.* — *Prerogative Power.* — *Judicial Power.* — The English statute of charitable uses is not in force in Indiana, nor the *cy pres* power, in so far as it is prerogative. The courts of this State have judicial power only, and do not undertake to uphold or to enforce any charity or gift to a charitable use which requires the exercise of prerogative power; but there is a *cy pres* power which is judicial in origin and character, and as such is exercised by the courts. In effect it is a liberal rule of construction.

SAME. — *Courts of Equity.* — *Jurisdiction.* — *Statute of 43 Elizabeth.* — Courts of equity have original and inherent jurisdiction over charities, and apply to them the rules of equity and such other rules applicable to charitable uses as courts of equity may exercise under the constitution and laws of the State, without reference to the statute of 43 Elizabeth.

SAME. — *Charity Defined.* — A charity, in a legal sense, is "a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." The purpose need not be called charitable in the gift itself, if so described as to show that it is so in its nature.

(357)

SAME.—*Gifts.*—*Trust and Trustee.*—Gifts made to particular charitable purposes, or to charity generally, will be upheld and administered, if there be a trustee with power to make them definite and certain.

SAME.—*Public Benefit.*—*Beneficiaries.*—In order that there may be a good trust for a charitable use, there must always be some public benefit, open to an indefinite number, the particular beneficiaries to be selected by the trustee. The 7th and 11th propositions enunciated in the case of *Grimes' Ex'rs* v. *Harmon*, 35 Ind. 198, criticised and disapproved as inconsistent with the 10th and 12th propositions therein, which are approved.

SAME.—*Bequest.*—*County Benevolent Fund.*—A bequest of a fund to trustees to form a county benevolent fund, the trustees being empowered, upon such plan as they may choose, to apply the annual income to poor families, widows and orphans, new comers in distress, or persons in such county suffering from want of clothing, food or fuel, especially in the winter; but not to drunkards, but to their suffering families, if worthy; not to companies or corporations, unless formed for the relief of the poor; not to churches, but to those in distress, and especially to suffering families, from whatsoever country, etc., is a good gift to charity.

From the Superior Court of Vanderburgh County.

*C. Denby, D. B. Kumler, A. Iglehart* and *J. E. Iglehart*, for appellant.

*C. Buchanan, H. C. Gooding, J. S. Buchanan* and *S. R. Hornbrook*, for appellees.

WOODS, C. J.—The question in this case is, whether or not a bequest in the last will of Andrew Erskine constitutes a good gift to a charitable use or uses which can be upheld and administered under the law of this State. The action is by the heir at law, who claims the fund on the ground that the beneficiaries of the bequest are uncertain and incapable of being determined by the courts; that no power of determination or selection is conferred on the trustees named in the will or upon their successors; that the entire scheme is one of benevolence only, or, if charitable, then of private charity; and that if some of the objects named are of public charity, which might stand by themselves, they are made invalid by being coupled with others of a distinctly benevolent or private character, which can not be enforced in this State.

The provisions of the will, so far as relevant and necessary to be stated, are as follows:

" I do hereby set apart the proceeds arising from all my promissory notes, after complying with the requisitions of article 6; also the balance due from the sale of real estate, after paying the bequests in article 5 of this my will, to form a Vanderburgh County Benevolent Fund; and I do hereby will and bequeath the same to the trustees named in the 19th article of this my will, and to their successors, to be by them held in trust for the uses and purposes hereinafter mentioned and declared; and for the sake of convenient reference I hereby designate the said sum that will remain, as aforesaid, after the last mentioned bequests are paid, as 'the trust fund.' The said trust fund shall be safely and securely invested by my said trustees (and kept so invested by them and their successors forever) in such manner as shall secure the largest annual income consistent with the entire safety of the principal of said trust fund, which is, however, always to be an object of paramount importance, and is never to be jeopardized for any purpose whatever. It is to be under the control and management of the said trustees and their successors forever, and the interest and income arising from the investment thereof (or as much thereof as may be required) shall * * be used and applied by the said trustees and their successors to benevolent purposes, as hereinafter mentioned and directed;

* * * but the principal of said trust fund shall never, under any pretext, be lessened or diminished, but may be increased and enlarged by the addition or accumulation of interest, if any portion of said interest should not, in the judgment of said trustees and their successors, be required to be applied to the benevolent purposes hereinafter mentioned.

" The annual interest or income of the said trust fund * * * shall forever be appropriated and applied by the aforesaid trustees and their successors forever, to the following benevolent objects, to wit: To poor families, widows and orphans;

new comers in distress, or persons in Vanderburgh county suf-
fering from want of clothing, food or fuel, especially in the
winter; not to be paid to drunkards, but to their suffering
families, if worthy ; not to companies or corporations of any
kind, except such associations as may be formed for the relief
of the poor ; not to churches of any profession whatever, but
to those in distress, and especially to suffering families, from
whatsoever country or whatever name or denomination ; not
to paupers who are a county charge, but to such as by a little
timely aid may be prevented from becoming a county charge.
The said trust fund shall be under the management of the
trustees hereinafter appointed and their successors, and the
income thereof shall be disbursed by them, they keeping in
view the objects above indicated.   As our experience proves
that but a small proportion contribute to the relief of the dis-
tressed, it is necessary that a small fund like this should be
carefully husbanded, and that the most prudent scrutiny should
be observed by distributing to those only who are needy and
worthy, and to alleviate, as far as possible, private distress.
To accomplish this object I think female associations are the
most desirable, as what come under their notice are generally
most distressing and least known, besides they have most
patience in procuring the necessaries and comforts required,
which is preferable to making donations in money, it being
frequently wrongly applied.

"A majority of the trustees and their successors hereinafter
named shall be competent to transact any business entrusted
to said trustees and their successors, and they, the said trus-
tees and their successors, may establish any rules for their
government, or for the management of the trust fund, which
are not inconsistent with the provisions of this my will."

Provision is made for supplying the place of any trustee
who should fail to qualify, as well as for filling any after-
occurring vacancy by the court of common pleas, or, if that
court should be abolished, by the court which should succeed
to the probate jurisdiction.   Two executors are named, and

six trustees, the appellee Whitehead being designated as both executor and trustee.

The complaint shows that the testator died in November, 1874; that the will was duly probated, and the other executor having renounced, and the others named as trustees having failed to qualify, Whitehead qualified, proceeded to administer the estate, and, after payment of the debts and legacies, undertook to discharge the duties of trustee, paying annuities and distributing the surplus according to his understanding of the will.

Preliminary to a discussion of the specific objections made to the will in question, counsel for the appellant say:

" In this State, in *McCord* v. *Ochiltree,* 8 Blackf. 15, followed by *Sweeney* v. *Sampson,* 5 Ind. 465, and *Common Council, etc.,* v. *State,* 5 Ind. 334, three propositions were established as follows:

" 1. That the prerogative power of the king as *parens patriæ* devolved upon the sovereignty of the State, and was administered by our court of chancery ;

" 2. That the statute of 43 Elizabeth, known as the statute of charitable uses, was in force in Indiana; and,

" 3. That the doctrine of *cy pres* will be invoked in aid of an uncertain gift to charity in this State as in England.

"*Second.* These propositions were regarded as the law until the decision of the case of *Grimes' Ex'rs* v. *Harmon,* 35 Ind. 198, 249 (9 Am. R. 690). Cited 1 Jarman on Wills (Randolph & Talcott's edition), 488, *et seq.*

" That case overruled the former cases upon all three propositions. It is true, that the language of the court, in overruling these decisions, in terms, confines the effect of the overruling to the enlargement of the jurisdiction of our courts by the statute of Elizabeth. But the methodical formulation of the law, as applied to the case at bar, overrules those cases *in toto* upon the three propositions above enumerated. This is manifest. Referring to the first and second of these propositions, Mr. Justice Buskirk, speaking for the court, after an

elaborate statement of the prerogative power in England and the statute of charitable uses, proceeds :

" ' 5. That in this country the people are the true and legitimate possessors of all power; that when they created the Federal Government they did not confer on such government any prerogative power ; that if such power exists in the people, it was retained by them in their sovereign capacity ; that the people of this State retain all the power that was not delegated to the Federal or State governments; that it is expressly declared in our State Constitution that the judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such inferior courts as the General Assembly may establish, and that such courts shall have such civil and criminal jurisdiction as may be prescribed by law ; that the General Assembly has only conferred upon the courts of this State judicial power and functions ; that the courts of this State having no prerogative power, and being incapable of administering and enforcing the remedy provided by the statute of charitable uses, they only possess judicial power, and can only exercise, in reference to charitable uses and trusts, such power and jurisdiction as was and is possessed and exercised by the court of chancery in England acting as a court of equity.'

"Again, discussing the third proposition above stated, to wit, the *cy pres* power, the court proceeds :

" ' 9. That the *cy pres* power, which constitutes the peculiar feature of the English system, and is exerted in determining gifts to charity where the donor has failed to define them, and in framing schemes of approximation near to or remote from the donor's true design, is unsuited to our institutions, and has no existence in the jurisprudence of this State on this subject.'

"These utterances, in a case where each of the propositions were involved in the controversy, clearly operated to change the law in this State, so that, since the year 1870, the law as stated in *McCord* v. *Ochiltree* and other cases following it, is no longer the law on this subject. And although there are

*dicta* which have thrown confusion upon the subject, yet if that case were now before the court, and it followed *Grimes' Ex'rs* v. *Harmon,* it must be overruled upon all the points. In other words, the former cases are all overruled by the latter upon all the points we have discussed, and the law upon this subject, laid down in *Grimes' Ex'rs* v. *Harmon,* which has been recognized in every case since decided, is laid down thus:

"'7. To constitute a charitable use, there must be a donor, a trustee competent to take, a use restricted to a charitable purpose, and a definite beneficiary. In case of a grant or demise, where there is no party or parties designated who can take the property, or where they are so uncertain that the court can not direct intelligently the execution of the trust, the property remains undisposed of, and falls to the heir or next of kin. A court of chancery, always acting for the beneficiaries, stops the instant it ascertains that there are none, or that they are so uncertain that it will have to act in the dark when it sets about the application of the trust.'

"Again the rule is further elaborated thus:

"'11. That there is no difference whether a devise or bequest be immediate to an indefinite object, or to a trustee for the use and benefit of an indefinite object. If it be immediate to an indefinite object, it is void; and if it be a trust for an indefinite object, the property that is the subject of the trust is not disposed of, and the trust results to the benefit of those to whom the law gives the property in the absence of any other disposition of it by the testator or donor.'

"We claim that the case at bar is within the rule here laid down; that, although there is no controversy as to the trustees, still the devise is utterly void for the indefiniteness of the description of the beneficiaries, to which we will call special attention further on."

It may be observed here, that, in the opinion delivered in the case of *Board, etc.,* v. *Rogers,* 55 Ind. 297, it was said that only so much of the opinion in *McCord* v. *Ochiltree* as held the statute of the 43 Elizabeth c. 4 to be in force here

was overruled by the case of *Grimes' Ex'rs* v. *Harmon, supra;* but this, the counsel for the appellant insist, is only the *dictum* of the judge who wrote the opinion, and, if adopted as authoritative, involves an unheard of "judicial summer-sault."

We agree with counsel that the English statute of charitable uses, except, perhaps, as it may serve to indicate or define what are charities, is not in force here; because its provisions and machinery are local to the kingdom of Great Britain, and are not applicable here.

We deem it equally clear that the *cy pres* power, in so far as it is a prerogative power, does not exist here. Our courts have only *judicial* power, and, consequently, can not undertake to uphold or enforce any charity, or gift to a charitable use, which requires the exercise of anything beyond judicial authority.

It is, however, apparently well established that there is a *cy pres* power, which is judicial in its origin and character, recognized and exercised by the English and by the American courts generally, though rejected by some of the latter, and by some carried to a much greater extent than by others. A full and perspicuous discussion of the subject is found in chapter 23 of 2 Perry on Trusts, pp. 297–395, from which we make the following extracts, deemed to be directly relevant to the present discussion:

"Sec. 717. In dealing with the subject of charities, courts, in many cases, seem to suppose that there is need of some extraordinary powers to carry them into effect: they have used expressions which indicate a supposition that their ordinary equity powers were not sufficient to give effect to many charitable bequests. The fact is, that the ordinary judicial powers of courts of equity, applied properly to the subject-matter, are sufficient to carry into effect almost all charitable bequests. The professional mind of America has labored over the doctrine of *cy pres* as it is called, and has seemed to suppose that most charitable bequests can not be carried out without the

aid of some arbitrary power. It is proposed to examine the doctrine."

Summing up, the author says:

" Sec. 727. From this review of the law it appears that the object of all the rules upon this subject is to ascertain and carry out, as nearly as may be, the true intention of the donor. As thus explained, the doctrine of *cy pres* is only a liberal rule of construction. * * The crown, in the exercise of its prerogative, always professes to be governed by the intention of the donor. * * The difference between the crown and the court is this: the court is governed by known judicial rules of interpretation; the crown is governed by its own good-will and pleasure in deducing or imputing such intentions as it sees fit.

" Sec. 728. When the *cy pres* doctrine is reduced to its elements, it becomes a very simple judicial rule of construction; and, as such, courts in all the States can and do apply it without usurping any prerogative powers. * * *

" Sec. 748. The distinctive principles of equity, which courts apply to the enforcement and regulation of trusts for charitable uses, are confined to those States which have adopted the statute 43 Eliz. c. 4, or the principles of the common law in regard to trusts, as they existed prior to the statute. * *
It is not very material whether courts of equity, in the several States, trace their jurisdiction to the statute itself as in force in their State, or whether they exercise the jurisdiction as original and inherent in courts of equity by common law, anterior to the statute. Substantially the same principles are applied, and the same results are reached, in either case.

" Sec. 694. * * * It is now conceded as settled, that courts of equity have an original and inherent jurisdiction over charities, independent of the statute. The consequence of this final determination is important in this respect, that courts of equity, in the various States, where they are not prohibited by statute, exercise an original, inherent jurisdiction in equity over charities, and apply to them the rules of equity,

together with such other rules, applicable to charitable uses, as courts of equity may exercise under the constitution and laws of the several States; and the courts do this by virtue of their inherent powers, without reference to the question whether the statute has been technically adopted in their States.

"Sec. 697.   *   *   *   The word 'charity,' in its *widest* sense, denotes all the good affections men ought to bear toward each other; in a more restricted sense, it means relief or alms to the poor; but in a court of chancery the signification of the word is derived from the statute of Elizabeth. Hence it has been said that those purposes are considered charitable which are enumerated in the statute, or which by analogy are deemed within its spirit or intendment. Another short but practical definition has described it as 'a gift to a general public use, which extends to the poor as well as the rich.' But Mr. Justice Gray has given a definition which includes all the facts and circumstances, and all varieties of charity under the law, and leaves nothing to be desired. In his words 'a charity in a legal sense may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons,—either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.'

"Sec. 709.   *   *   *   From the foregoing cases and principles, it will be seen that courts of chancery uphold and administer gifts where they are made to particular purposes which are charitable within the letter and spirit of the statute, or where they are made to charity generally, if there is a trustee with power to make them definite and certain. It will further be seen that the word 'charity' has obtained a signification in law, and that courts do not uphold or admin-

ister trusts for particular purposes which are not charitable within the meaning of the law; nor trusts expressed in general words, which do not come within the legal signification of the word ' charity.'

" Sec. 710. In order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number; that is, the persons to be benefited must be vague, uncertain and indefinite, until they are selected or appointed to be the particular beneficiaries of the trust for the time being.

" Sec. 719. * * * There is a wide distinction between a gift to *charity*, and a gift to a *trustee* to be by *him* applied to *charity*. In the first case the court has only to give the fund to charitable institutions, which is a ministerial or prerogative act; in the second case, the court has jurisdiction over the *trustee*, as it has over all trustees, to see that he does not commit a breach of his trust, or apply the funds in bad faith, or to purposes that are not charitable.

" Sec. 722. * * * Lord Eldon expressed the rule when he said: * * The general principle thought most reconcilable to the cases is, that where there is a general indefinite purpose, not fixing itself upon any object, the disposition is in the king by the sign-manual; but where the execution is to be by a trustee with general or some objects pointed out, then the court will take the administration of the trust."

These propositions are well established, and their application illustrated, by numerous citations of the decided cases. They are in harmony with the cases decided by this court, and for the most part with the reasoning upon which the decisions were based. Whether reconcilable with the *seventh* and *eleventh* propositions quoted from the opinion in *Grimes' Ex'rs* v. *Harmon, supra,* may be questionable. The declarations contained in those propositions, that, to constitute a charitable use, there must be a " definite beneficiary," besides a competent trustee, and " that there is no difference whether a devise or bequest be immediate to an indefinite object, or to

a trustee for the use and benefit of an indefinite object," if by object is meant the individual beneficiaries which may be selected by the trustee, under authority conferred by the will, while supported by the decisions of the courts of Maryland and of some other States, including the later cases in New York, are against the current and much greater weight of American as well as English authority, and, indeed, are inconsistent with the 10th and 12th propositions laid down in the same opinion, which are as follows:

"10. That a gift to charity is maintainable in this State, if made to a competent trustee, and if so defined that it can be executed as made by the donor by a judicial decree, although the beneficiaries are not designated by name or specially pointed out, if the trustee is invested with full and ample discretion to select the beneficiaries of such charity from the class of persons named; but where the beneficiaries are described, as in this case, as the children, both male and female, of the African race in the United States, and where such race consists of about four millions, it will be impracticable to ascertain the beneficiaries, and distribute the proportionate share of such fund to each of such beneficiaries; and where, as in this case, the trustees have no discretionary power to select the beneficiaries from the class named, the devise and bequest are void for vagueness and uncertainty.

"12. If the charity does not fix itself upon any particular object, but is general and indefinite, such as the promotion of the moral and intellectual condition of a race, or the relief of the poor, and no plan or scheme is prescribed, and no discretion is lodged by the testator in certain and ascertainable individuals, it does not admit of judicial administration. * * * If, however, in such a case, certain and ascertainable trustees are appointed, with full powers to select the beneficiaries and devise a scheme or plan of application of the funds appropriated to the charitable object, the court will, through the trustees, execute the charity."

Upon these principles, which accord with the later rulings

Erskine *v.* Whitehead, Executor, *et al.*

·of this court, if there had been a good appointment of trustees it is by no means clear that the will of Samuel Grimes should not have been deemed valid as conferring upon the trustees the power to select the particular individuals who should receive the benefit of the fund.   It is hardly a fair construction of that will that each child of the African race in the United States should receive a "proportionate share."   The impracticability ·of such distribution, connected with the express direction in the will that the fund " be expended in the education of col- ·ored children, both male and female, in such way and man- ner " as a majority of the trustees should " determine," is ·enough to rebut any such intention, and would seem plainly enough to have been designed to clothe the trustees with am- ple powers in this respect.   See the comment on this case in 2 Perry Trusts, sec. 713, and note to sec. 728.

The bequest now in question is clearly a validly declared ·one.   The trustees are named, and provision made for their perpetual succession.   The general object of the donor's bounty, though repeatedly called benevolent, and though for the pur- pose of relieving individual distress, was a public charity—a gift to a charitable use in the sense of the law, because par- ticular individuals are not named as the beneficiaries, there being, in that respect, that vague indefiniteness which is es- sential to the definition of a public charity.   The general ob- ject is sufficiently well stated.   It is in substance the relief of the poor of and in Vanderburgh county—to poor families, widows, orphans, new comers in distress, persons suffering from want of clothing, food or fuel, especially in the winter ; not to paupers, drunkards or to corporations, except, etc., but to those in distress, and especially to suffering families, from whatsoever country, and of whatever name or character.

The distress and suffering referred to are manifestly those which come from or are aggravated by poverty, and may be relieved by the hand of charity.   The purposes named are each and all charitable, within the legal meaning of charity ;

the scheme is not universal, but, by a fair construction, limited to Vanderburgh county; and the trustees are clothed, in explicit terms, with ample power to devise and execute any scheme or plan by them deemed necessary to accomplish the general purpose declared in the will.

This conclusion has strong support from the decisions made in *Ex Parte Lindley*, 32 Ind. 367; *Craig* v. *Secrist*, 54 Ind. 419; *DeBruler* v. *Ferguson*, 54 Ind. 549; *Board, etc.,* v. *Rogers*, 55 Ind. 297; *Haines* v. *Allen*, 78 Ind. 100 (41 Am. R. 555); cases which are not consistent with the propositions on which counsel for the appellant have based this appeal. See also R. S. 1881, secs. 2996-7.

Judgment affirmed.