Hunt v. Edgerton.

# APPEALS—CHARITABLE TRUSTS.

[Stark (5th) Circuit Court, 1906.]

Donahue, McCarty, and Taggart, JJ.

*JAMES H. HUNT v. CHARLES EDGERTON ET AL.

1. RIGHT OF TRUSTEE TO APPEAL IN INTEREST OF CESTUI QUE TRUST.

   In an action brought by a trustee of a charitable trust under **Rev.** Stat. 6202 (Lan. 9743), to construe the trust, where the common pleas court, on hearing the same, holds that there is no trust, it is the right of the trustee to appeal to the circuit court in the interest of the *cestui que trust*.

   [For other cases in point, see 7 Cyc. Dig., "Trusts and Trustees," §§ 439-443. —Ed.]

2. CERTAINTY OF BENEFICIARIES OF CHARITABLE TRUSTS.

   The individual beneficiaries of a charitable trust must necessarily be vague and uncertain, and it is sufficient if a class is designated from whom the trustee can select.

   [For other cases in point, see 2 Cyc. Dig., "Charities," §§ 18-26, 61-66.—Ed.]

3. POWER OF TRUSTEE TO SELECT BENEFICIARIES OF CHARITY FUND.

   A trustee clothed with the power of administering a trust fund for such public charity has, without special delegation thereof, incidental authority to select from the classes named the individual beneficiaries thereof.

   [For other cases in point, see 2 Cyc. Dig., "Charities," §§ 61-83.—Ed.]

4. SUFFICIENCY OF BEQUEST CREATING CHARITABLE TRUST.

   Testator providing in his will a fund "to be applied by my trustee to the education of colored children, by which I mean in whole or in part of negro blood, and in case an opportunity or opportunities should hereafter occur to unite the fund hereby bequeathed for similar purposes, it is my will that my trustee for the time being have power to unite the fund hereby bequeathed with such other fund or funds upon such terms and conditions as may to him seem best fitted to carry out the objects and purpose of this devise; and, should the fund hereby devised by the addition of other funds or otherwise ever become sufficiently large for that purpose, it is my preference that a manual labor school, upon a similar footing to the Charity School of Kendall as at present conducted, should be established and supported by said fund for the benefit of colored children, but this preference is not designed to be binding or controlling upon my trustee," such bequest creates a good and valid charitable trust and is not void for uncertainty in object or beneficiaries and a court of equity will not permit the same to fail for want of a trustee.

[Syllabus by the court.]

APPEAL from Stark common pleas court.

**R. H. Day** and **Austin Lynch,** for plaintiff.

**J. W. Craine** and **James Welker,** for defendants.

## DONAHUE, J.

This case comes into this court upon appeal. The first question submitted to us arises upon the motion of the several defendants to

---

*Affirmed, without report, *Edgerton* v. *Hunt*, 75 Ohio St. 000; 51 Bull. 575.

Stark County.

dismiss the appeal for the reason that the plaintiff is not prejudiced by the judgment below and is not affected thereby and has no such interest in the suit as would authorize his appealing the same.

The plaintiff as trustee of the will of John Hall, deceased, brought action for the construction of an item in the will which created that trust estate. That resulted in the court's finding that no trust existed in favor of the parties attempted to be described therein, and in effect held that there was no trust and nothing to be construed, and that he must account to the heirs of Hall for the funds in his hands.

We think it clearly appears that this trustee of this express trust and the trust fund in his hands which he is required to protect for the benefit of the *cestui que trust* is affected by the judgment in this case, and where the judgment is not merely a direction to him as to how he should administer the trust but is practically destructive of the trust, it is not only his right but his duty to appeal the cause.

His petition did not ask the court to declare there was no trust but simply asked the court to direct him how to administer it. It is unnecessary at this time to determine whether he might appeal or not in case it was simply a direction to him as to the manner and method of administering his trust, for that is not the question before us. It is sufficient to say that we think that he as trustee is affected by this judgment, that it is adverse to him in his trust capacity, and as such trustee he has as much right and power to appeal as if it had been adverse to him personally.

As noted above the petition was filed in the common pleas court by James H. Hunt, trustee of a fund created by the will of John Hall, deceased, asking the court to give judgment and direction in regard to the true construction of the will of said John Hall, deceased, and especially the eighth clause thereof which provided the fund of which he is now the trustee. The heirs at law of John Hall, deceased, are made parties and answer, claiming that the objects and beneficiaries of the trust are indefinite and uncertain, and for that reason the bequest mentioned in item eight of his will fails, and that they, as heirs at law, are entitled to receive the same. And this is the principal question in this case.

A great deal of evidence has been introduced, touching the administration of John Hall's estate, turning over of the fund to the trustee, the appointment of the present trustee in the place of one named in the will after the decease of that trustee, the amount of the fund, and the relationship of parties to this suit to the testator.

Hunt v. Edgerton.

And also evidence touching the conduct of the Charity School of Kendall mentioned in the eighth item of the will. From this evidence we find that the defendants named are heirs at law of John Hall, deceased; that John Hall died in 1854; that his widow died in 1859; that his estate was fully settled and administered in 1860; and that this final account contains an item as follows: "Paid to the John Hall trust fund, $2,480.62;" that Arvine C. Wales, named by said will as executor and trustee, qualified as such executor in 1859, and filed said final account in 1860; that it does not appear from the evidence that he qualified as such trustee; nor does any voucher appear on file in the probate court with his accounts receipted by himself, or anyone else as trustee for the sum stated in said account to be paid to said trust fund; that in 1884 the said Arvine C. Wales, being deceased, his wife as his executrix filed an account for him as such trustee, and thereupon the present trustee was appointed by the probate court of this county to take charge of said fund and to control the same, and said trustee, the present plaintiff, then took charge of said fund and has held and conserved the same, but up to the time of the commencement of this suit has made no application of any of the revenues thereof to the objects of said trust, but has permitted the same to accumulate, and at the time of the bringing of this action, it amounted to the sum of about $10,000 and that the investment of the same, the augmenting of the principle by the interest, was in pursuance of the directions of the testator, and as a part of the active duties of such trustee in the administration of such trust.

The only part of the will of importance in determining the questions at issue here is the eighth item thereof, which reads as follows:

"Eighth. It is my will that the proceeds arising from the sale of my real estate, shall form a fund, the principle of which shall never be diminished or in any way encroached upon, but it shall always be kept at interest well secured by mortgage upon real estate, and when said fund, by the addition of one-half of the interest arising from said principle, or such part thereof as may not be necessary for the comfortable support and maintenance of my wife, Catherine, as aforesaid, during the widowhood of my wife as aforesaid, and by the addition of the whole of the interest arising therefrom after the subsequent marriage or death of my wife, shall in the estimation of my trustee have become sufficiently large for that purpose, it is my will that the yearly interest arising from said fund, be applied by my trustee to the education of colored children, by which I mean, in whole or in part

of negro blood, and in case an opportunity or opportunities should hereafter occur to unite the fund hereby bequeathed with another fund or funds, given or bequeathed for similar purposes, it is my will that my trustee for the time being have power to unite the fund hereby bequeathed with such other fund or funds upon such terms and conditions as may to him seem best fitted to carry out the objects and purposes of this devise; and should the fund hereby devised by the addition of other funds, or otherwise, ever become sufficiently large for that purpose, it is my preference that a manual labor school upon a similar footing to the Charity School of Kendall, as at present conducted, should be established and supported · by said fund for the benefit of colored children, but this preference is not designed to be binding or controlling upon my trustee.''

The tenth item of the will mentions Arvine C. Wales as such trustee ''to take charge of and manage the trust fund hereby devised in the manner and for the purpose herein specified.''

It will be noticed that there is no suggestion in the will as to the appointment of a trustee upon the death of Wales, or upon his refusal to serve as such trustee; but there is no contention on the part of the heirs touching the right of the court to appoint a trustee to succeed this testamentary trustee, and. in passing, therefore, it is sufficient to say that a perpetual trust fund is created by this will and in the nature of things it must have been contemplated that no one trustee would survive the trust. There is no language in the will to show that it is a personal trust, and confidence in the first trustee named, that could not be exercised by another and there is nothing in the nature of the trust to prevent its execution in accordance with the intention of the testator as well by trustees appointed by the court as by one named in the will. That being true, we think the question of the right to appoint a trustee upon the death of Wales is fully covered by the case of *Sowers* v. *Cyrenius,* 39 Ohio St. 29 [48 Am. Rep. 418].

But the serious contention is, first, that the objects and the beneficiaries of this trust are uncertain, and that the trustee named is not, by the terms of the will, clothed with any discretionary powers to make these objects or the purposes definite and certain. First as to object— the language of the will in that behalf is,

''It is my will that the yearly interest arising from said fund be applied by my trustee to the education of colored children.''

It is suggested that no particular education is designated; that the testator may have meant a scientific or theological education,

Hunt v. Edgerton.

manual training, musical, literary or many other branches of education. But we think, where there is no specification as to the kind and character of education to be given, that it necessarily and naturally follows, by the use of the word, that an education along the lines of education given by our common schools is intended; that the word "education" in the ordinary use and the generally accepted significance of the term is sufficiently explicit to designate such an education, and that, if any other was intended, or any particular branch or line of education intended, the testator should and would have pointed it out. So that we think it clearly apparent that the education that he meant and intended was education in the common branches along the lines of education sought to be accomplished by the public schools of our state; and this fact is, we think, particularly manifested by the condition of the colored people under our laws at the time this will was executed.

There are some other suggestions, however, in this item of the will as to how this object is to be accomplished, either by uniting with other funds for similar purposes or by establishing a school along the line of the Charity School of Kendall; but these matters are all left to the discretion of the trustee. The only thing incumbent upon him is, that the income shall be expended for the education of colored children; so that upon this contention we find against the claim of the heirs at law.

The next contention is, that the beneficiaries of the will are uncertain. Again turning to the will we find this language:

"It is my will that the yearly interest arising from said fund be applied by my trustee to the education of colored children, by which I mean children in whole or in part of negro blood."

It is contended (1) that there is an uncertainty as to what class of children is meant in the term of "colored children," because testator has not said what proportion of negro blood would constitute a colored child. At that time there were some statutes of Ohio relating to the rights and also disabilities of colored people, for instance, relating to marriage, and to vote, etc., and these statutes uniformly designated persons of visible admixture of African blood. So, that, we think, would furnish a fair test if one were necessary. But the language of this will is plain and specific and in no wise uncertain. If there is any negro blood in the child, it comes within the designation of colored children. If it is to be taken literally, there is no trouble about it. If it is to be taken and measured according to the laws of the state then in force,

there would no difficulty arise. In either case the beneficiary would be easy of ascertainment. So we think there is nothing substantial in that contention.

Next, it is contended that this includes not only the colored children of Stark county, not only of Ohio, not only of the United States, but of the whole world, and that each and all of the children having any negro blood in their veins anywhere in the world are entitled as beneficiaries under this devise and that the same necessarily fails for such uncertainty, as to beneficiaries. In considering this, it is necessary to examine to some extent the nature of the trust. It is undoubtedly a public charity. If that be true then the very first element of a public charity is, that the beneficiaries thereof be indefinite and uncertain; that is to say, a class may be designated or a race may be designated, and so long as we are able to determine the class to which the charity is to be applied, that is sufficient for the purpose of a charitable trust. It is said in *Sowers* v. *Cyrenius*, 39 Ohio St. 29, 35 [48 Am. Rep. 418]:

"It is no objection to the validity of the trust that the individuals to be benefited by it are not designated in the will, for this indefiniteness is a necessary characteristic of charitable trusts."

In Perry, Trusts Sec. 710, it is stated:

"In order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number. That is, the persons to be benefited must be vague, uncertain and indefinite until they are selected or appointed to be the particular beneficiaries of the trust for the time being."

Without multiplying authorities we think that this is the true rule, and that this is the distinguishing feature that distinguishes a private from a public charity. If the individuals, beneficiaries of the trust are fixed certain and definite so that their names can be ascertained, and they may receive an exact proportion of the trust fund, it is no longer a public charity. A public charity from the very nature of the thing itself must be indefinite and uncertain. And if there is any way provided by which the individuals may be selected from this vague and indefinite number, then it is sufficient for the purposes of a public trust. But of course it was not intended that this small fund should be applied to the colored children of the world. That was, and is impossible from the very nature of things and the testator must have realized that; so that it was necessarily his intention that individuals from this race should be selected as beneficiaries of the trust. And if

he has provided for that then the designation of the beneficiaries is sufficient. If he has not it must fail for uncertainty. Another rule that has seemed to meet the approval of all courts of this country, dealing with this question, is the rule,

"That gifts for charitable purposes shall always be favored, and trusts created for such purposes carried into effect by courts of equity, if at all possible to do so."

The rule in England is, that all such charitable trusts shall be carried into effect, and that any uncertainty in the beneficiaries thereof shall be set at rest by the courts whether or not the intention of the testator can be exactly followed or not. It is said by some authorities that this doctrine applies in this country only not under the same name, and that reduced to its elements the *cy-pres* doctrine of England is a very simple judicial rule of construction, and as such, courts in all the states can and do apply it without usurping any prerogative powers. But we do not understand that to be the law. The definition is nicely stated by Lord Eldon in this language:

"The general principle thought most reconcilable to the cases is, that where there is a general indefinite purpose, not fixing itself upon any object, the disposition is in the king by the sign manual; but where the execution is to be by a trustee with general or some objects pointed out, then the court will take the administration of the trust."

The first principle that is there announced is what is known as the *cy-pres* doctrine but has never been adopted in this state although some inferior courts have held to the contrary. The second principle—that is, where the execution is to be by trustee with general or some objects pointed out—then the court will take the administration of the trust, is the law of practically every state of this union, and we do not hesitate to declare it to be the doctrine of Ohio in relation to trusts. But further than that courts of this state, at least, will not go. So that, notwithstanding the favorable view that courts may take of such public charities and the desire to enforce such trusts, if it cannot be done according to the intention of the testator it must fail, and courts will not attempt to direct an independent trust that seems right and proper to the court without regard to the directions and intentions of the testator. This whole question resolves itself into a consideration of whether or not the trustee of this trust has the right of selection of beneficiaries from the class of individuals named in the will.

The case of *Grimes* v. *Harmon*, 35 Ind. 198, is undoubtedly a well-considered case and is of great assistance to this court in disposing of the question at bar.

But we do not agree with it in all its conclusions, although we agree with the result reached in that case. And Indiana has not permitted all the doctrines announced in that case to go unchallenged. That portion announced in that case that would seem to require of us to declare this trust void is no longer the law of that state.

But in the case of *Erskine* v. *Whitehead*, 84 Ind. 357, 360, a different rule is announced, and one we think more in consonance with the doctrine of other states, and particularly the state of Ohio, so far as the courts of this state have considered the question here involved. In that case the will provided that the annual interest or income of said trust shall forever be appropriated and applied to the aforesaid trustees and their successors forever to the following benevolent objects, to wit: To poor families, widows and orphans; newcomers in distress, or persons in Vanderburgh county suffering from want of clothing, food or fuel, especially in the winter; not to be paid to drunkards, but to their suffering families, if worthy; not to companies or corporations of any kind, except such associations as may be founded for the relief of the poor; not to churches of any profession whatever, but to those in distress, and especially to suffering families, from whatsoever country or whatever name or denomination, etc. And it was there held that the trustees appointed to administer the trust had the power and authority to select the individual beneficiaries thereof from the classes therein named.

In *Hunt* v. *Fowler*, 121 Ill. 269 [12 N. E. Rep. 331], the bequest was, "That the income of the fund be distributed annually among the worthy poor of the city of La Salle, in such manner as a court of chancery may direct," and notwithstanding no trustee was appointed to distribute the fund, yet the court held that the power of distribution by the court necessarily included the power to select the individuals to whom distribution should be made and that any trustee appointed by the court for that purpose should have such incidental powers; and further in commenting upon the same the court says, "that the case stands the same as if the testatrix herself had appointed a trustee to distribute the fund. The trustee to be appointed by the court will, in fact, be a trustee of her appointment, made through the court of chancery." So that in such case the trustee acquired no further right than if he had been named in the will, and yet was held to have the power of selection.

In the case of *Hesketh* v. *Murphy*, 36 N. J. Eq. 304, the income was to be used for "the relief of the most deserving poor of the city

Hunt v. Edgerton.

of Patterson, aforesaid forever, without regard to color or sex; but **no person who was known to be intemperate, lazy, immoral or undeserving, to receive any benefit from said fund.**" This bequest was held valid; and it was further held that the power to dispense the fund carried with it by implication the power to select the particular beneficiaries. And in this particular case many more things are to be determined than in the case at bar.   First, as to the temperance or intemperance, whether moral or immoral, deserving or undeserving, lazy or diligent, and so on, and yet without any special delegation of that power it was held to be a power incident to the other powers of the trustee.   In this particular will in the case at bar, a great many things are specifically left to the judgment of the trustee.   While it is true that it is not specifically stated that he shall select the individual beneficiaries from the class named, yet reading the item as a whole no other conclusion can be reached but that it was intended by the testator that the trustee should apply it as best he could along the lines directed and for the specific purpose named, and that in doing so he should exercise all the discretion incident to the performance of such a trust.

There are many authorities that may be cited in support of all of the propositions that we have advanced, but we have called attention to enough for the purpose.   It is true, there are some authorities to the contrary, but they are few and far between, and in many instances are clearly distinguishable from the case at bar.   But at all events the great weight of American authorities on this question are to the effect (1) that the individual beneficiaries of a charitable trust must necessarily be vague and uncertain, and it is sufficient if a class is designated from whom the trustee can select the same; (2) that a trustee clothed with the power of administering a trust fund for such public charity has without special delegation thereof incidental authority to select from the classes named the individual beneficiaries thereof.

Our conclusion therefore is, that this trust is a valid one; that the trustee has the power to select the individual beneficiaries from the classes named, and that this selection ought to be and necessarily must be fair and impartial, without reference to sex or any other qualification than required by the provision of the will, and in such number as the income of said fund will warrant, and it is his duty so to do when in his opinion honestly exercised the fund is sufficiently large that the income thereof will enable him to carry out the objects of the trust. And upon his failure to properly execute his trust honestly, fairly and impartially the remedy therefor is ample.

**25 O. C. C.   Vol. 29.**

Stark County.

Motion for new trial by the heirs at law overruled.

Exceptions noted. Thirty days for separate finding of fact and law and the statutory time for bill of exceptions. The costs in this court are taxed to the defendants, and the costs also in the common pleas court made upon the issue joined by the answers of said defendants and petitioner are also taxed to the defendants. Costs of the petition and other necessary costs for the construction of the will shall be paid out of the fund.

**McCarty** and **Taggart, JJ.,** concur.

---

## JONES LOCAL OPTION LAW—REVIEW ON ERROR.

[Franklin (2nd) Circuit Court, October, 1906.]

Wilson, Sullivan and Dustin, JJ.

JONES LOCAL OPTION LAW, IN RE REHEARING.

1. PARTIES TO REVIEW OF PROCEEDINGS UNDER JONES LOCAL OPTION LAW.

Where a review is desired, of proceedings under the Jones local option law (98 O. L. 68), the qualified. elector who feels aggrieved should appear as plaintiff and the mayor of the municipality in question as the defendant in error.

2. POWERS OF JUDGES IN CHAMBERS MUST BE EXPRESSLY GRANTED BY STATUTE.

Inasmuch as no express authority is given the judges of the circuit court in this statute, Sec. 12 of act 98 O. L. 68; Lan. 7293a; B. 4364-301, or in any statute to grant leave to file a petition in error in vacation at chambers, a petition filed at such a time and by such leave must be stricken from the files.

[Syllabus approved by the court.]

ERROR to Franklin common pleas court.

**Addison & Addison, Gumble & Gumble** and **C. C. Williams,** for plaintiff in error.

**W. B. Wheeler,** for defendant in error.

**WILSON, J.**

In these cases it is sought to obtain a review in this court, of the proceedings before the officers with whom the petitions were filed, and by whom the order was made in pursuance to the provisions of the act popularly known as the Jones local option law, 98 O. L. 68 (Lan. 7283a *et seq.;* B. 4364-30a *et seq.*). The provisions for review are found in Sec. 12 of that act. It is therein provided that,

"Any person being a qualified elector of any residence district of any municipal corporation wherein a petition shall have been presented