## SWEENEY and Another *v.* SAMPSON, Executor.

*A.*, being a trustee appointed by a will, in breach of the trust, executed to *B.*, who had notice of the trust, a bond conditioned for the conveyance to him at a stipulated period of certain real estate left by the testator. In a suit by *A.* against *B.*, before the time fixed for executing the conveyance, upon a promissory note given for an instalment of the purchase-money, *held*, that the inability of *A.* ever to execute to *B.* a valid conveyance of the land, was a sufficient defence to the action.

A testator after bequeathing the use and revenue of all his property in, &c., to his brother and sisters during their lifetime, provided by the will that after the decease of any one or all of them, the share that each of them should have in the property was to be applied, a part in *Pennsylvania*, and the

Nov. Term, 1854.

SWEENEY
v.
SAMPSON.

residue in the *United States* generally, "for the diffusion of useful knowledge and instruction amongst the institutes, libraries, clubs or meetings of the working classes, or manual laborers who earn their bread by the sweat of their brow," &c. *Held*, that the bequest could be sustained as a charity.

*Wednesday,
December 6.*

APPEAL from the *Posey* Circuit Court.

PERKINS, J.—This was an action of debt upon a promissory note, brought by *Alexander Mc Clure*, the payee, now deceased, and represented here by *Sampson*, his executor, against *Sweeney* and *French*, the makers of the note. There was a trial by the Court upon the general issue, accompanied by an agreement that all defences might be proved under it, and a judgment for the plaintiff.

We copy the bill of exceptions, which embodies all the facts of the case. It is as follows:

"*Alexander Mc Clure* v. *John Sweeney* and *Zadock French*. Debt. In the *Posey* Circuit Court, *March* term, 1850. Be it remembered that on the trial of this cause, after the plaintiff had read in evidence the note mentioned in his declaration, the parties made the following agreement as to facts, touching the matters in controversy in said cause, to-wit:

" It is agreed by the parties in this suit, that the note or writing obligatory mentioned in said plaintiff's declaration, is one of the notes specified in the bond hereto annexed, and that the same, with other notes mentioned in said bond, was given for the purchase-money of the land mentioned therein.

" The bond reads thus: Know all men by these presents, that I, *Alexander Mc Clure*, of the county of *Posey*, state of *Indiana*, am held and firmly bound unto *John Sweeney* and *Zadock French*, known as the firm of *Sweeney* and *French*, of the county aforesaid, in the penal sum of eleven hundred dollars, which well and truly to be paid the said *Sweeney* and *French*, their heirs or assigns, I bind myself, my heirs and executors, firmly by these presents. Sealed with my seal, and dated this fifth day of *April*, 1848.

" The condition of this obligation is such that whereas the said *Mc Clure* has this day sold unto the said *Sweeney* and *French*, for the sum of 550 dollars, a certain tract or parcel of land situated in the county and state aforesaid,

known and described as the west seventy of the south
eighty of the south-west quarter of section thirty-three,
township five south, range thirteen west; also, the north-
east quarter of the south-west quarter of the aforesaid sec-
tion, containing, in both of said tracts of land, one hundred
and ten acres, be the same more or less; for the payment
of which the said *Sweeney* and *French* have paid unto the
said *McClure* the sum of 137 dollars and 50 cents in cash,
and executed to said *McClure* three notes of hand, each
for 137 dollars and 50 cents, said notes bearing date with
this instrument, and payable in one, two, and three years
from date.    Now, if the said *McClure* shall make or
cause to be made unto the said *Sweeney* and *French*,
or their heirs, a good and sufficient warranty title to the
above described premises, after the full payment of the
aforesaid described notes, according to the tenor thereof,
then and in that case this obligation to be void and of no
effect, otherwise to remain in full force and virtue in law.
[Signed] *A. McClure*, [seal.]    In presence of [signed] *James
Sampson.*

" It is agreed that said land was owned in fee simple by
*William McClure*, in his lifetime, and at the time of his
death; that said *Alexander McClure* was, at the time of
executing said bond, the executor of the last will of *Wil-
liam McClure*, deceased, and also the administrator with
the will annexed of said *William McClure's* estate; and
that before the commencement of this suit, said *Alexan-
der* was removed from both of said offices by the Probate
Court of *Posey* county.

" The will reads thus:  I, *William McClure*, a citizen of
the *United States* of *America*, now residing in the city of
*Mexico*, being of sound mind, memory, and understanding,
do make and publish this my last will and testament, in
manner following, that is to say:

"1.  I give and bequeath to my sister, *Anna McClure*,
my brother, *Alexander McClure*, and my sister, *Margaret
McClure*, the use and revenue of all my property, real and
personal, in and about *New-Harmony*, in the county of
*Posey*, and state of *Indiana*, during their lifetimes, to be

Nov. Term,
1854.

SWEENEY
v.
SAMPSON.

equally divided amongst them, and under the management of said *Anna* and *Alexander McClure*, and after the decease of any one of them, or of the whole, the share that each shall have in said property to be applied for the diffusion of useful knowledge and instruction amongst the institutes, libraries, clubs, or meetings of the working classes, or manual laborers who earn their bread by the sweat of their brow, agreeable to the instructions and directions which shall be inserted in a codicil to this will.

"2. I give and bequeath to Mrs. *Thomas Say*, widow of the late *Thomas Say*, naturalist, an annuity of 200 dollars during her lifetime.

"3. I give and bequeath to the Miss *McClures*, in *Galway*, an annuity of 200 dollars during their lifetime, said annuity to be under the management of my sister, *Anna McClure*, for equal division amongst them.

"4. I give in trust to *George W. Ewing*, *John Wilbank*, and *John Speakman*, all my property, real and personal, in *Spain*, to be by them applied to the diffusion of useful knowledge, and instruction of the working classes, or manual laborers who gain their bread by the sweat of their brow, in the state of *Pennsylvania*, agreeable to the instructions and directions which shall be inserted in a codicil to this will.

"5. From all my property, real and personal, which may remain in any part of the world after fulfilling the beforementioned bequests, I give and bequeath to my sister, *Anna McClure*, an annuity of 600 dollars, to be paid quarterly 150 dollars, during her lifetime.

"6. I give and bequeath to my sister, *Margaret McClure*, an annuity of 600 dollars, to be paid quarterly 150 dollars, during her lifetime.

"7. I give and bequeath to my brother, *Alexander McClure*, an annuity of 600 dollars, to be paid quarterly 150 dollars, during his life.

" All of which annuities, on the decease of the parties, to be joint to the funds or property that may remain in any part of the world after my death, to be appropriated expressly for the purpose of the diffusion of useful know-

ledge and instruction amongst the institutes, libraries, clubs or meetings for useful instruction of the working classes, or manual laborers who gain their living by the sweat of their brow in the *United States* of *America*, agreeable to the instructions and directions which shall be inserted in a codicil to this will.

" I do hereby revoke, abrogate, and abolish all former wills by me made, as null and void.

" In witness, I, the said *William McClure*, do hereby set my hand and seal, the said will executed, from motives of prudence, in duplicate, this 29th day of *January*, 1839. [Signed] *William McClure*, [L. s.]

" Signed, sealed, published and declared by the said *William McClure* as and for his last will and testament, in the presence of us who have, at his request, hereunto subscribed our names as witnesses thereto, in the presence of the said testator and of each other. *January* 29, 1839. [Signed] *John Eschenberg*, *John Black*.

" Consulate of the *United States* of *America*, *Mexico*, *January* 29, 1839. The undersigned, consul of the *United States* of *America*, hereby certifies that the signature to the foregoing will is that of the testator, done and made as his own free act, in the presence of *John Eschenberg* and *John Black*.

" Executed and recorded in the consulate, at the request of the testator.

" In testimony whereof I have hereunto set my hand and seal of office, this day and year first above written. [Signed] *W. D. Jones*, [L. s.]   Registered, folio 131.

" Whereas I did, on the twenty-ninth day of *January*, in the year 1839, in *Mexico*, make and execute a will subject to a codicil or codicils, of which the following is part—

" I give and bequeath to *Fermin Gomez Farras* a yearly sum or annuity of 600 dollars, for four years after his arrival in the *United States*, and the commencement of his professional or collegiate studies at *Philadelphia;* and for his return to *Mexico* after or during any period of the said four years that he may wish, the further sum of 200 dollars.

Nov. Term,
1854.

SWEENEY
v.
SAMPSON.

" I do hereby constitute and appoint my brother, *Alexander McClure*, and my sister, *Anna McClure*, my executors for fulfilling the foregoing will and codicil, on the foregoing and following conditions:

" First. After paying and fulfilling all the foregoing sums or annuities, my property, real and personal, in *Spain*, left in trust to *George W. Ewing*, *John Speakman*, and *John Wilbank*, and my property, real and personal in and about *New-Harmony*, after the decease of the said *Alexander McClure*, *Anna McClure*, and *Margaret McClure*, together with all my property, real and personal, after paying the foregoing sums or annuities, shall be appropriated for the diffusion of useful knowledge amongst the working classes who labor with their hands and earn their living by the sweat of their brow, on the following terms, viz.: Having experienced in all countries that unless the millions have some idea of the value of instruction and useful knowledge, it is labor lost to attempt giving them useful information.    That as soon as any club, institute, or society of laborers who shall work with their hands, shall establish in *Pennsylvania* a reading and lecture-room, with a library of at least one hundred volumes, then, and not until then, my executors are authorized to aid and assist them with a sum not exceeding 500 dollars, to be paid out of the proceeds of my property in *Spain;* and my aforesaid executors are likewise authorized, and it is my will, that they appropriate a similar sum of 500 dollars out of my other property in the *United States* of *America*, to any institute, club or society, who may establish, in any part of the said *United States*, a reading and lecture-room, with a library of, at least, one hundred volumes; and each of the aforesaid executors is authorized to constitute and appoint, at his decease, any person or persons who, jointly with the surviving executor or executors, may aid in the execution of this will; provided the said person or persons shall not belong to, or have any connection with law, church, or state.

" Should any dispute arise about the construction or

meaning of this will or codicil, the parties who will not comply with the decision of the said executors shall be deprived of all the advantages of this will, as if their names had never been mentioned in it. In witness whereof, I, the said *William McClure*, do hereunto set my hand and seal to the said codicil and duplicate, this 23d day of *September*, 1839. [Signed] *William McClure*, [L. s.]

"Signed, sealed, published and declared by the said *William McClure*, in the presence of us, who have, at his request, hereunto subscribed our names as witnesses thereto, in the presence of the said testator and of each other, the day and year above written. [Signed] *W. S. Parrot, Warwick B. Freeman.*

"No. 305. Consulate of the *U. S. A. Mexico, September* 23, 1839. I, the undersigned, consul of the United States of *America*, hereby certify that the signature to the foregoing codicil is that of the testator, done and made as his own free will and accord, in the presence of *William S. Parrot* and *Warwick B. Freeman*, Esq., and recorded in this consulate at the request of the testator.

"In witness whereof I have hereunto set my hand and seal of office, the day and year above written. [Signed] *W. D. Jones*, [L. s.] Registered, folio 189 to 192.

"Whereas I, *William McClure*, in the city of *Mexico*, on the 29th day of *January*, 1839, did make a will and testament in which I established a trust under the management and control of *George W. Ewing*, now residing in *Paris, John Wilbank* and *John Speakman*, residing in *Philadelphia*, for the purpose of appropriating all or any part of my *Spanish* property that might be in my possession at my death, for the diffusion of useful knowledge amongst the working classes in the state of *Pennsylvania*, in the United States of *America*; but on reconsidering the melancholy state of morality which prevents dead men's wills from being fulfilled or executed, when they give any property for the use and benefit of the poor and working classes, but, on the contrary, the monied aristocracy find means to purloin the said property, for the use, support, and maintenance of their privileged classes. For the

Nov. Term, 1854.

SWEENEY
v.
SAMPSON.

above reasons, and many more that might be adduced, I do hereby abrogate, revoke, and annul said trust, and discharge the said *George W. Ewing*, *John Wilbank*, and *John Speakman* from being my trustees, or having any right or authority to interfere in the execution of any part of the aforesaid will.

"In witness whereof I, the said *William McClure*, do hereunto set my hand and seal, the said will being executed, for motives of prudence, in duplicate, this 24th day of *January*, 1840. [Signed] *William McClure*, [L. S.]

"Signed, sealed, and declared, and published by the said *William McClure*, in the presence of us who, at his request, have hereunto subscribed our names as witnesses in the presence of the said testator and one another, this 24th of *January*, 1840. [Signed] *Henry M. Beale, John P. McCartney.*

"*Mexico, March* 27, 1841. We, the undersigned, subscribing witnesses to the codicil dated on the 24th of *January*, 1840, annexed to the last will and testament of *William McClure*, deceased, late a citizen of the *United States*, certify and declare that we saw *William McClure*, the testator, sign, seal, and acknowledge the same, and that he did, in the presence of each of the undersigned, subscribing witnesses, publish and declare the said codicil as and for his last will and testament; that at the doing thereof he was of sound and disposing mind, memory, and understanding, as the witness believed; that the name, *William McClure*, to the above-named codicil subscribed, is in the proper handwriting of the said *William*, and that the names of the subscribing witnesses thereto are our proper handwriting respectively, and were subscribed by us in the presence of each other, at the request and in the presence of the said testator. In witness whereof we have signed and sealed this declaration, the day and year above written. [Signed] *Henry M. Beale*, [seal.] *John P. McCartney*, [seal.] Sealed and delivered in presence of us. [Signed] *W. W. West, Theodore Dunning, J. Henrie Mairss.*

"No. 813. Consulate of the *United States* of *America*, *Mexico*.

" Personally appeared before the undersigned, vice-consul of the *United States* of *America*, residing in the capital, *Henry M. Beale* and *John P. Mc Cartney*, (subjects of her *Britannic* majesty,) who being first duly sworn on the holy evangelist of Almighty God, on oath declared that the facts set forth in the above declaration to which they have subscribed their names and affixed their seals, in attestation of the codicil of the 24th of *January*, 1840, to the last will and testament of *William Mc Clure*, are true as therein stated, which declaration is now annexed to the said will and codicil, together with this certificate. Register, folio 383.

" In testimony whereof I have hereunto set my hand and affixed the public seal of the consulate, this 24th day of *March*, 1841. Given in duplicate. [Signed] *John Black*, [seal.]

" Legation of the *United States* of *America, Mexico, March* 29, 1841. The undersigned, envoy extraordinary and minister plenipotentiary of the *United States* of *America*, near the *Mexican* government, certifies that *John Black*, whose name is subscribed to the above instrument of writing, was vice-consul of the *United States* of *America*, in and for the city of *Mexico*, on the day of the date thereof, and that full faith and credit ought to be given to all his official acts as such.

" Given under my hand and the seal of the legation, the day and year above written. *Powhatan Ellis*, [L. s.]

" Consulate of the *United States* of *America* at *Vera Cruz*. I, *L. E. Hargrous*, vice-consul of the *United States* of *America* at *Vera Cruz*, do hereby certify that the foregoing declaration, signed by *Henry M. Beale* and *John P. Mc Cartney*, acknowledged before *John Black*, vice-consul, and certified by *Powhatan Ellis*, envoy extraordinary and minister plenipotentiary of the *United States* at *Mexico*, is recorded in my current register, letter C, folio 254.

" In testimony whereof I have hereunto set my hand and affixed my seal of office, the 6th day of *April*, 1840, and of the independence of the *United States* of *America* the sixty-fifth. *L. E. Hargrous*, vice-consul *U. S. A.*

Nov. Term,
1854.

SWEENEY
v.
SAMPSON.

"State of *Indiana*, *Posey* county, sct.    Probate Court for *Posey* county, *November* term, 1841.

"Now here, in open Court, on the first day of the *November* term thereof, 1841, being the 8th day of *November*, 1841, of which Court the Hon. *Samuel Annable* is sole judge, *Alexander McClure*, the executor named in the codicil to the foregoing last will and testament of *William McClure*, deceased, late a citizen of the said county of *Posey*, appeared in open Court and presented the last will and testament of the said *William McClure*, deceased, with the codicils thereto annexed, for the purpose of proving the same in due form of law, and thereupon the said *Alexander McClure* produced in Court *William A. Twigg* and *Achilles E. Fretageot*, credible and respectable citizens of the county of *Posey*, as witnesses, who, being sworn according to law, the said *Achilles E. Fretageot* upon his oath says, that he is well acquainted with the handwriting of *William McClure*, from having frequently seen him write and subscribe his name; that he has examined the signatures to the will of said *William McClure*, dated the 29th day of *January*, 1839, and the signatures of the two codicils thereto annexed, one dated the 23d day of *September*, 1839, and the other dated the 24th day of *January*, 1840, purporting to be the signatures of the said *William McClure*, and that the signatures are in the proper handwriting of the said *William McClure*.  And the said *William A. Twigg* upon his oath says, that he is well acquainted with the handwriting of *John Black*, whose name is subscribed as a witness to the said will of *William McClure*, dated the 29th day of *January*, 1839, and that he is well acquainted with the handwriting of *W. S. Parrott* and *Warwick B. Freeman*, whose names are subscribed as witnesses to the codicils to said will dated the 23d day of *September*, 1839, and that he is also acquainted with the handwriting of *Henry M. Beale* and *John P. McCartney*, whose names are subscribed to the codicil of said will, dated the 24th of *January*, 1840; that he has frequently seen said *John Black*, *W. S. Parrott*, *Warwick B. Freeman*, *Henry M. Beale*, and

Nov. Term, 1854.

SWEENEY
v.
SAMPSON.

*John P. Mc Cartney* write, and that the signatures purporting to be theirs are in their own proper handwriting, and that the said witnesses, nor either of them, are residents of the said state of *Indiana*.

"For authentication of which said proof of said will, and the codicils thereto attached, I have hereunto set my name and caused the seal of said Court to be affixed, and countersigned by the clerk of this Court. [Signed] *Samuel Annable*, judge. Countersigned, *T. Nelson*, clerk. Recorded, *November* 29, 1841. *T. Nelson*, R. P. C.

"It is further agreed by the parties, that at the time of said sale of said lands in the above bond mentioned to the defendants by said *Alexander Mc Clure*, he, the said *Alexander*, as executor as aforesaid, had in his hands personal property belonging to said estate to the amount of 60,000 dollars; and, also, that said *Alexander Mc Clure* is and was at the date of said bond, the sole heir at law of said *William Mc Clure*, deceased, capable of inheriting in law, the said *Margaret* and *Anna Mc Clure* having died prior to the date of said note and bond, the execution of which is admitted, which being all the evidence," &c. [Signed] "*Pitcher*, for plaintiff. *Jones* and *Hovey*, for defendants."

It appears from the foregoing evidence that the consideration of the note in suit was the obligation of *Alexander Mc Clure* to execute to the makers of said note, on a day subsequent to its falling due, a good and sufficient deed to certain described lands. In *Wright* v. *Blachley et al.*, 3 Ind. R. 101, this Court decided that "if one of several instalments of purchase-money for land be payable before the deed is to be made, it is no defence to a suit brought by the payee to recover such instalment, before the time appointed for the execution of the deed, that the payee had no title to the land at the time when the contract was made."

But in that case it did not appear that the payee would, necessarily, be unable to execute a good deed when the stipulated time for such an act to be done should arrive.

Such a case was not in the contemplation of the Court, and would not be reached, should it occur, by the authority of *Wright* v. *Blachley et al.*, *supra;* for the obligation to make a deed to lands, of a person who never could convey a title to such lands, could not constitute a valid consideration for a promise to pay for them.

How stands the case before us?

The lands, on the execution of a bond for a title to which the note in suit was given, belonged to *William McClure*, at his death, formed a part of his estate; and we are hence led to inquire how the title to them has become vested in *Alexander McClure?* He claims that the title passed to him, either as heir, or under said *William's* will. Did it so pass, is the question.

As the will purports to dispose of all the property, real and personal, of said *William McClure*, *Alexander* can not derive title to the real estate he has assumed to sell, as *William's* heir, if said will is valid. This, then, is the first question.

The will, after certain legacies, bequeaths the balance of *William McClure's* property in aid of the diffusion of knowledge amongst that portion of community who live by manual labor—a class sufficiently distinct to be identified—and points out the method in which the aid is to be supplied, viz., through the distribution of books—the augmentation of libraries established by associations of laboing-men, in *Pennsylvania*, as to one class of his property, and in the *United States*, as to every class.

That this bequest can be sustained as a charity we have no doubt. It is in aid of the cause of education. Books are essential means and instruments in advancing that cause. And in cases of such bequests equity will supply trustees and settle schemes for their administration, whenever it may be necessary.

We shall not go into an examination of the authorities for the purpose of establishing these positions. Since the case of *Vidal et al.* v. *Girard's Executors* in the Supreme Court of the *United States*, 2 Howard 127, and that of *McCord* v. *Ochiltree*, in this Court, 8 Blackf. 15, such an

examination would be a work of supererogation by us. See, also, *The Common Council, &c., of Richmond* v. *The State ex rel., &c.*, in this Court, *ante*, p. 334.

*Alexander McClure*, then, had no valid title as heir. What right or power had he under the will?

He was the executor and the trustee to carry into effect the trusts of the will; but he could sell the real estate, in his fiduciary capacity, if at all, only when it might be necessary to carry into effect the purposes of the will; and then it would be necessary that the sale should take place under the direction of a Court of chancery. No such necessity existed when the sale in question was made, as the executor then had 60,000 dollars' worth of personal property, uncalled for, in his hands, and no direction of a Court of chancery was sought.

Mr. *Hill*, in his excellent work on Trustees, p. 463, says: "As a general rule trustees of charities should never alienate the trust estate without the sanction of the Court. It does not necessarily follow that such an alienation will be treated *per se* as a breach of trust; for in some instances the Court has sanctioned, and has even gone so far as to direct a sale by the trustees, where such a course has appeared to be for the benefit of the charity; (although a very strong case indeed must be established before the Court will so act). And what the Court will sanction upon its own consideration of what would have been beneficial to the charity, may also be done by trustees, upon their own authority, in exercise of their legal powers. But it is plain, that in ordinary cases a most important part of the duty of trustees is to preserve the trust property, and it lies with those who seek to support a sale by them to show that the transaction in question was beneficial for the charity. In the absence of such proofs, and *a fortiori*, if there be any evidence showing that the sale was improvident or prejudicial to the charity, it will be treated as a breach of trust and set aside."

*Adams*, in his late work on Equity, p. 201, lays down this for law:

"The trustee having the legal dominion, may exercise

Nov. Term, 1854.

SWEENEY
v.
SAMPSON.

that dominion for effectuating the objects of his trust, but he can not do so for any other object; he may manage the property in a husbandlike way, but he can not waste or alienate it;" and he cites *The Attorney General* v. *Pargeter*, 6 Bea. 150.—*The Attorney General* v. *Foord*, 6 *id.* 289.—*The Attorney General* v. *Newark*, 1 Hare 395.

*Hill, supra,* at page 282, further says, that, "where the disposition of the trust estate by the trustee to a third party still remains in contract, the Court will not enforce a specific performance of the agreement, if it amount to a breach of trust, or be made by mistake, or for inadequate consideration; nor will any difference be made in this respect in favor of a *bona fide* purchaser." And, again, on the same page, "if he purchased *with notice* of the trust, his conscience will be affected with the same equity as the trustee from whom he purchased."

In the case before us, the sale by *Alexander McClure* was a breach of trust, was to a party who has notice of the trust, and it still remains in contract. It is a sale, then, which a Court will never enforce, and in which, should a conveyance be made pursuant to the contract, a Court would set the conveyance aside. It presents an example, then, of a bond, with the conditions of which the obligor never can comply; a case where he never can make a good title; and one, consequently, where his bond can not constitute a consideration for the payment of the purchase-money.

HOVEY, J., having been concerned as counsel, was absent.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*A. P. Hovey,* for the appellants.

*J. Pitcher* and *S. Judah,* for the appellee.