. ESTATE OF EDWARD HULL, DECEASED.

[No. 14,067; decided December 26, 1894.]

Wills—Lapse of Bequest to Corporation.—A bequest to a street railway corporation to establish a reading-room for its employees lapses where, before the death of the testator, the corporation is consolidated with others to form a new company.

Charity.—Where There is a Gift to Charity generally, indicative of a general charitable purpose and pointing out the mode of carrying it into effect, if that mode fails, still the general purpose of charity shall be carried out; but where the testator shows an intention, not of general charity, but to give to some particular institution, then if it fails because there is no such institution, the gift does not go to charity generally.

Cy Pres—When Doctrine not Applicable.—Where the object of a bequest in trust is incapable of being performed, both the trustee and beneficiaries having ceased to exist prior to the death of the testator, the doctrine of cy pres cannot be invoked, and the court is unable to name a trustee by whom the trust can be performed.

Charity.—The Main Distinction Between an Ordinary Trust and one for charitable uses is that the former is for a definite, ascertained object, while the latter is favored and supported in equity by reason of the uncertainty of its object.

Charity.—Where the Intention of the Testator, as shown by the language employed in his will, was to create a fund for the benefit of persons who were capable of being ascertained and recognized, there is no uncertainty of the object of the trust, and the main feature of a public charity is lacking.

Charity.—A Bequest to a Street Railroad Corporation in trust, to be by it invested and the income used in purchasing books and magazines for the reading-room of the employees of such corporation, is not a public charity.

Charity.—A Corporation can Exercise No Powers beyond those specified in its charter, and a street railroad corporation cannot be endowed with the powers, duties or responsibilities of an eleemosynary or charitable institution.

Trusts.—A Corporation Organized to Operate a Street Railroad or a system of street railroads, and of acquiring and holding property required for such purpose, has no legal capacity or power to accept or perform a trust to take a fund and invest it and use the income in the purchase of books and magazines for the reading-room of its employees.

Trust.—A Bequest to a Corporation in Trust, which cannot be enforced by the beneficiaries because beyond the power of the corporation to accept or perform, is void.

Trust.—Where a Bequest in Trust is Made to a Specified Corporation, and a discretion is confided to it in performing the trust, and such corporation goes out of existence and is succeeded by another corporation prior to the death of the testator, the bequest does not go to the successor, for to sanction the exercise by it of the discretion confided to its predecessor would be an altering of the testator's will.

The will mentioned in the opinion below was admitted to probate, and Timothy L. Barker and Joseph D. Grant were appointed executors thereof, and letters testamentary were issued to them, on November 14, 1893.

On November 5, 1894, the Market Street Railway Company (claiming as the successor of the Omnibus Cable Company) filed a petition for distribution to it of the bequest contained in the eighteenth clause of the will, which clause is fully set out in the opinion. On December 14, 1894, the executors filed an answer to this petition. The facts found by the court are stated in the opinion.

Fred B. Lake, for the petitioner.

Lloyd & Wood, for the executors.

COFFEY, J. 1. Edward Hull, a director and stockholder in the Omnibus Cable Company, on the 21st of May, 1891, made his will, the eighteenth clause of which reads:

"Eighteenth—I give, devise and bequeath unto the Omnibus Cable Company of San Francisco, State of California, a corporation organized and existing under the laws of said state, the sum of ten thousand ($10,000) dollars in trust, to be by it invested in such good and safe interest-paying securities as the directors of said corporation shall deem advisable. The entire income thereof to be appropriated, at such times

and periods during each year as said directors shall deem best, in purchasing such books and magazines as they shall deem suitable and best for the reading-room of the employees of said corporation."

2. October 13, 1893, the Omnibus Cable Company and ten other street railroads, under section 473 of the Civil Code, amalgamated and consolidated their capital stock, debts, property, assets and franchises. A new company was organized, called the "Market Street Railway Company." The Secretary of State certified that its certificate was properly filed in his office on the fourteenth day of October, 1893. Its board of directors immediately organized, and to it was assigned and it took possession of all the capital stock, property, assets and franchises of the eleven street railroads, including the Omnibus Cable Company, assumed their debts, and thereafter all of said roads became and were operated as one system. In consideration of the transfer of its franchises, property, etc., to the Omnibus Cable Company was issued twenty per cent only of the capital stock of the new corporation; the balance of its stock was divided amongst the stockholders of the other ten railroads. A large proportion of the employees of the late Omnibus Cable Company were employed by the new company, and any vacant places were filled by men, employees of the new company. A general superintendent for the entire system was employed, also track builders and track repairers. From the time of the consolidation on, the Omnibus Cable Company had no officers nor employees.

At the time of the consolidation the Omnibus Cable Company, at each of its power-houses, had what was called a waiting-room, where its employees came and waited until they were called to their several duties. In it were posted the rules and regulations for the government of the various employees, and bulletins containing instructions for them. This room was for the use of the employees of the company only; in it there was not any library, nor any books, magazines, newspapers or reading matter of any kind, excepting the posted rules, etc., above referred-to. The employees called it the "gilly room." After the consolidation these rooms were maintained by the new corporation in the same manner as before, but to them all the employees of the new corporation

had access, if they chose to go there, including the general superintendent of the entire system, the track builders, repairers, etc.

There never was any reading-room maintained by the Omnibus Cable Company or the new corporation, unless the room above referred to might be considered one.

3. October 24, 1893, ten days after the issuance of the certificate by the Secretary of State, the organization of the new corporation, and its taking possession of all the franchises, property, assets, etc., as above stated, Edward Hull died.

The new corporation, the Market Street Railway Company claims that it is the successor to the Omnibus Cable Company; that the devise and bequest was a public charity, and, as such successor, it has the right to take and administer it.

The executors claim that the bequest could only vest on the death of Edward Hull; that it was a special and limited trust, for the especial and exclusive use of the employees of the Omnibus Cable Company only, and to be held and administered only by the directors of the Omnibus Cable Company. That ten days prior to the death of Edward Hull said Omnibus Cable Company went out of existence—died, and since then there have not been and cannot be any employees of said company. That since his said death there has not been, and at the time of the death of said Edward Hull there was not, anyone to take said legacy. The Omnibus Cable Company was dead; it had no employees, and never again could have any.

As said in Shields v. Ohio, 95 U. S. 323, 44 L. Ed. 357: "All—the old and the new—could not coexist. It was a condition precedent to the existence of the new corporation, that the old ones should first surrender their vitality and submit to dissolution."

And in Pullman Car Co. v. Missouri Pacific Co., 115 U. S. 594, 6 Sup. Ct. 194, 29 L. Ed. 501: "It is a new corporation, created by the dissolution of several old ones, and the establishment of this in their place. It has new powers, new franchises and new stockholders," and, we may add, new employees for the entire new system, all commingled.

When the Secretary of State certified to the filing of the articles (October 14, 1893), that instant the new corporation was created: Civ. Code, sec. 295.

The bequest could not vest until the testator died (October 24, 1893) : Civ. Code, sec. 1341.

The counsel for the Market Street Railway Company argues that this bequest creates a trust for a charitable purpose.

"A charity is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, by erecting or maintaining public buildings or works, or otherwise lessening the burdens of governments": Jackson v. Phillips, 14 Allen, 574, Gray, J., quoted in Estate of Hinckley, 58 Cal. 497.

"In the Girard Will Case the leading counsel for the will thus defined charity: 'Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private or selfish' (Mr. Binney's argument, p. 41)": Ould v. Washington Hospital, 95 U. S. 311, 24 L. Ed. 451.

"The word 'charity,' in its widest sense, denotes all the good affections men ought to bear toward each other; in a more restricted sense it means relief or alms to the poor; but in a court of chancery the signification of the word is derived from the statute of Elizabeth": Perry on Trusts, 3d ed., c. 23, sec. 697.

In the case of Dodge v. Williams, 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103 (bequest of money to be used in the education and tuition of worthy indigent females), the court says, at page 98: "It was objected that the beneficiaries of this charity are uncertain. A charitable use is essentially shifting. When a trust defines the beneficiaries with certainty, it is rather private than public. As Mr. Perry remarks, charity begins where uncertainty of the beneficiaries begins. · (Section 687.) 'It is no charity to give to a friend. In the books it is said that the thing given becomes a charity where the uncertainty of the recipients begins. This is beautifully illustrated in the Jewish law, which required the sheaf to be left in the field for the needy and passing stranger.' (Fontain v. Ravenel, 17 How. 369, 15 L. Ed. 80.) It is the number

and indefiniteness of the objects, and not the mode of relieving them."

In the case of Burd Orphan Asylum v. School District, 90 Pa. 21, testatrix by her will provided for the establishment of an asylum, whose object should be the maintenance and education of white female orphan children, of not less than four years or more than eight: First, who shall have been baptized in the Protestant Episcopal Church in the city of Philadelphia; second, the same class of children baptized in said church in the state of Pennsylvania; third, all other white female orphan children, between the said years, without respect to any other description or qualification whatever, except that at all times, and in every case, the orphan children of the Protestant Episcopal Church shall have the preference. Held, that the asylum was a purely public charity.

All gifts for the promotion of education are charitable in the legal sense: Russell v. Allen, 107 U. S. 172, 2 Sup. Ct. 327, 27 L. Ed. 401; Estate of Hinckley, 58 Cal. 511; Drury v. Inhabitants of Natick, 10 Allen, 169; Sweeney v. Sampson, 5 Ind. 465.

A will directing the executor to invest the residue of the estate "as he may deem best, as a fund, the annual interest of which shall be applied for the benefit of the Sabbath school library of the First Baptist Church in S., or the Baptist Home Missionary Society, whichever may be deemed most suitable," is a good charitable bequest: Fairbanks v. Lamson, 99 Mass. 533; see Drury v. Natick, 10 Allen, 169.

The attention of the court is also called to the case of Saltonstall v. Sanders, 11 Allen, 446; 3 Am. & Eng. Ency. of Law, 128, 129, 132.

There can be no doubt, says the counsel, but that Mr. Hull intended to benefit the employees operating the lines of the Omnibus Cable Company by providing them with a means of obtaining instruction, recreation and pleasure. The purpose of his bounty—this charity—was the same as if he had bequeathed the amount to provide clothing or food or medicine for the indefinite class of persons he had selected. It is a significant fact that although he was a stockholder in the Omnibus Cable Company, though he consented in writing to its consolidation with the other constituent corporations forming

the Market Street Railway Company, though the inception, development and consummation of such consolidation must have been the work of months, still this clause in his will remained unaltered, and he made no codicil to explain that in case such consolidation was effected, his will was that the bequest should lapse or should be diverted to some other channel.

Counsel for the corporation claimant contends, secondly, that the lines of railroad heretofore operated by the Omnibus Cable Company are now and will be hereafter operated by the Market Street Railway Company, under and by virtue of the franchises acquired from the Omnibus Cable Company by the consolidation.

By the consolidation the Market Street Railway Company acquired the franchises of the Omnibus Cable Company, together with those of the remaining constituent corporations. True, the constituent corporations lost their identity as corporations. The authorities quoted by the learned counsel for the executors fully sustain that position, but it is submitted that the employees operating the lines of railroad of the Omnibus Cable Company did not by such consolidation lose their identity as either conductors, gripmen or otherwise operating such lines. The class of persons selected by Mr. Hull remained the same as if no consolidation had in fact been made. He designated a class of persons to receive the benefits of this bequest, and this class still remains. It certainly seems hard that in case of such a charity the trustee, by voluntary action, in which the beneficiary has no word, can, with the aid of strangers, bar the legacy. It is submitted such is not the law. Again, though at the death of Mr. Hull the Omnibus Cable Company, as a company, had been merged in the Market Street Railway Company, its franchises still lived, and were and will be operated by the Market Street Railway Company; the class of persons selected by Mr. Hull were and are still performing identical duties to those performed by them prior to such consolidation, and on the identical lines of road. The trustee under the will is wanting; the beneficiaries are still in existence as a class.

Finally, counsel for the corporation claimant insists that the execution of the trust is for a definite purpose by a trus-

tee, and the court should take the administration of the trust and carry it into effect cy pres: Estate of Hinckley, 58 Cal. 457, 512; Jackson v. Phillips, 14 Allen, 580; Burr v. Smith, 7 Vt. 241, 29 Am. Dec. 154; Howard v. Society, 49 Me. 302; Derby v. Derby, 4 R. I. 439; Winslow v. Cummings, 3 Cush. 358; Bliss v. Bible Soc., 2 Allen, 334; Academy v. Clemens, 50 Mo. 167; Kiefer v. Seminary, 46 Mich. 636, 10 N. W. 50; Gilman v. Hamilton, 16 Ill. 225; Moore v. Moore, 4 Dana (Ky.), 354, 29 Am. Dec. 417; Philadelphia v. Girard's Heirs, 45 Pa. 9, 84 Am. Dec. 470.

In view of the fact that the legacy had vested in a charity prior to the decease of the testator, counsel thinks that the court ought to grant the prayer of petitioner to be appointed trustee for the execution of the trust.

The learned counsel for the Market Street Railway Company evidently appreciates the necessity of convincing the court at the outset that the bequest in question is for a charitable purpose in the strict legal sense of that term. Unless that point can be established, the claim of petitioner is overthrown without further examination, for the reason that both devisee or trustee and the beneficiaries have disappeared.

The main distinction between an ordinary trust and one for charitable uses is that the former is for a definite ascertained object, while the latter is favored and supported in equity by reason of the uncertainty of its object: 3 Am. & Eng. Ency. of Law, 132.

Tried by this definition, the trust in question is not a charity. The purpose of the testator is plain. His intention, as shown by the language employed in his will, was to create a fund for the benefit of persons who were capable of being ascertained and recognized.

The bequest was designed wholly and exclusively for the employees of the Omnibus Cable Company. There was no uncertainty as to the object of the devise. No difficulty could possibly arise as to the persons who should share in the benefits. If the testator had said that this fund should be employed in the purchase of reading matter designed for the education of certain named persons, it would not have been

more definite or certain than the description employed in his will by which the beneficiaries could at once be identified.

The benefit of the devise is confined by its terms to a certain number of people, and with as much exactness as if it had been limited to his own issue.

The counsel cites a case in which this proposition is illustrated: Dodge v. Williams, 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103.

In that case the court say, in speaking about the necessity that a charity should be uncertain: "This is beautifully illustrated in the Jewish law, which required the sheaf to be left in the field for the needy and passing stranger." When the harvest was ended and the grain was about to be gathered into the barns, a sheaf was left for the first needy one that might come that way; but the sheaf was not for the employee of any particular corporation. When the needy and passing stranger went into the field and proposed to take the sheaf, it was not required of him that he should exhibit his name on the payroll of some street railroad company.

The illustration exhibits the difference between an ordinary trust and one designed for charitable purposes.

The counsel also cites the remark of Perry, in his work on Trusts: "It is no charity to give to a friend." There can be no doubt that such is the accepted rule, and its application in this case becomes at once apparent when we find the learned counsel saying, in a subsequent part of his argument: "There can be no doubt that Mr. Hull intended to benefit the employees operating the lines of the Omnibus Cable Company."

It is evident that the design of Mr. Hull was to confine his bequest to that particular class of persons to whom he felt under obligations. They had served the corporation of which he was a large stockholder, and he intended to create a fund in their interests. In other words, they were his friends, and his devise to them was as such, and its certainty was ascertainable by a simple reference to the payrolls of the company.

In short, this bequest cannot be considered a charity under any of the rules declared in the adjudged cases.

There is neither trustee nor beneficiary competent to accept the devise in question. It is conceded that the Omnibus Cable Company, named in the will as the devisee of the fund in question, has passed out of existence. The learned counsel for petitioner concedes that at the oral argument this question was determined, and no attempt is made to combat the position then taken. If the Omnibus Cable Company ever had a soul, it has passed into the Market Street Railway Company, and that other part which Dean Swift declared it could not have for the purpose of affront must have gone the same way. In other words, the Omnibus Cable Company has been wholly absorbed by the Market Street Railway Company, and it has no longer any legal existence which makes it capable of performing the purposes of a trust.

It will be noticed that by the terms of the will the fund is to be controlled and managed by the directors of the Omnibus Cable Company. Upon the completion of the consolidation the directors of the Omnibus Cable Company ceased to have any power or authority, and there is no means provided by law whereby they can be retained in office or their successors elected. Not only is it clear that the corporation, the devisee named in the will, has ceased to have any being, but it also appears that the officers or instruments by which the corporation could alone act have ceased to exercise any of the functions which were absolutely requisite to the carrying out of the purposes of the testator.

The counsel says that the franchise of the Omnibus Cable Company still exists. In this there is evidently a misunderstanding on the part of counsel of the purport and intent of the section of the Civil Code which provides for a consolidation. It is there provided that two or more railroad corporations may consolidate their capital stock, debts, property, assets and franchises: Civ. Code, sec. 473.

The consolidation of the franchises can mean nothing more nor less than the gathering together of the rights to live of all of the consolidating corporations. This seems to be conceded by the counsel for petitioner; and it must be allowed that the Omnibus Cable Company went out of existence, and ceased to have any franchise or right to further existence, upon the completion of the consolidation. But not only did

the corporation pass out of existence and cease to have any being capable of either taking or executing a trust, but the beneficiaries named in the will ceased to occupy any such relations to the trustee, or to any trustee that this court might appoint, as would enable them to claim the benefits of the fund.

Recalling again the terms of the bequest, it is to be observed that its benefits are confined to the employees of the Omnibus Cable Company. If that company has ceased to exist, and if it has no employees, then the bequest must fail.

Take it that the Omnibus Cable Company, rather than consolidate with the Market Street Railway Company, had chosen to dissolve and wind up its affairs, and under such proceedings its street railways had been sold to the Market Street Railway Company; it would be at once conceded that the devise now in question must fail, because of the nonexistence of the trustee and the total disappearance of the beneficiaries; and the same result has been accomplished by means of the consolidation. The Omnibus Cable Company has not only ceased to have any legal existence, but it has wholly and absolutely ceased to have any employees. The class of persons named in the devise no longer exists. That class has passed into and become part of another and wholly different class, and there is no possible way by which that class can be followed or identified.

The testimony of Mr. Stein shows that the waiting-rooms maintained by the Market Street Railway Company are open to all the employees of that corporation. Any one of them has full liberty to go there and spend his leisure time, and if he be so disposed he can use any literature which may be in the room.

It will be seen at once that it would not be practicable, if possible, to confine the use of the reading matter to the employees named in the will, even if it should be construed, as claimed by petitioner, that the operators of the lines of road formerly owned by the Omnibus Cable Company are entitled to its benefit. All the other employees of the petitioner would be enabled to enjoy the use of the reading matter which was by the testator designed for a part only. This would be a diversion of the fund from the purpose intended by the tes-

tator, such as would wholly destroy his design. In other words, the changed condition of things renders the execution of the testator's purpose impossible. The introduction of the employees of a number of other corporations into the room renders its use for the purpose contemplated by the testator wholly out of question, and this court could not, under any powers it may possess, regulate the use in such a way as to confine it to the persons claimed by petitioner to be entitled to its benefits.

The claim that the court can nominate a trustee, by whom the purposes of this devise can be accomplished is met at the very threshold by the insuperable objection that such trustee could not execute the purposes of the trust. He would be without power to either demand or require the thing committed to his care.

The will requires the expenditure of the income arising from a fixed sum in the maintenance of a reading-room. This reading-room is the property of a corporation, and any trustee other than the corporation could have no legal right to enter upon, use or occupy the reading-room. He could, by act of the corporation, be precluded from any entry into the room for any purpose whatever. But it may be urged that the petitioner could be named the trustee. To this proposition the answer is apparent. The Market Street Railway Company has no capacity to execute such a trust.

The Omnibus Cable Company, named in the will, and the Market Street Railway Company are admitted to be street railroad corporations, organized under the provisions of the Civil Code of this state, and having only the powers conferred on such corporations: Civ. Code, secs. 354, 510 et seq.

When we look at the provisions of the code, it will at once be seen that a street railroad corporation cannot be endowed with the powers, duties or responsibilities of an eleemosynary or charitable institution. That this must be true is shown by the very nature of the trust which is undertaken by this will to be imposed upon the devisee.

Whether a trust can be accepted or held valid is determined by the relations which the parties making and accepting the trust bear to the subject matter.

It is conceded that Edward Hull could create a trust, but it is denied that he could constitute a street railroad company a trustee, because the trustee could not either accept or carry out the trust. In other words, neither the Omnibus Cable Company nor the petitioner ever had any legal capacity to accept or perform the purposes of the trust designated in the will of Edward Hull.

By reference to the articles of incorporation of the Omnibus Cable Company, and of the petitioner, it will be seen that each was formed wholly for the purpose of building and operating certain lines of street railroads, and of holding property required for the purpose of such railroads. The entire absence from the articles of incorporation of any declaration of a purpose to either accept or perform a trust must be apparent.

It has been frequently decided, and will be accepted as the rule, that a corporation has and can exercise no powers beyond those specified in its charter; and, failing to find anything in the charter or articles of incorporation of either of these corporations authorizing them to either accept or perform this trust, it must be conceded that the devise fails: Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950.

Whether a corporation can take a devise depends not only, as we have seen, upon its charter or its articles of incorporation, but also upon the relations which, by its acceptance, would be established between the corporation and the beneficiaries; and, in consideration of this question, we are at once confronted with the proposition that if the devise be lawful there must, in the very nature of things, be a corresponding remedy or right to its enforcement on the part of the beneficiaries.

If the Omnibus Cable Company, or the petitioner, took this devise and received the money, would it be possible for any employee to compel that corporation to maintain the reading-room in the will mentioned? It must be evident at once that no such order could be made, because of the simple fact that the corporation was not created for any such purpose. This would be a full and sufficient reply to any attempt on the part of any employee.

No stockholder of the corporation could be held for his proportion of the responsibility happening because of the failure of the company to properly dispose of the fund. If sued upon any such claim, the stockholder would necessarily reply that no such obligation as that imposed by the devise in this case was either expressed or contemplated in the creation of the corporation of which he became a stockholder.

As a result, from the foregoing considerations, it is concluded by the court:

1. That the bequest was not for charitable purposes.

2. That the Omnibus Cable Company, named in the will as devisee, passed out of existence during the lifetime of the testator, and no intention appears to substitute another in its place: Civ. Code, sec. 1343.

3. That by the consolidation of the several railroad corporations which were merged in and formed the Market Street Railway Company, the Omnibus Cable Company not only ceased to exist, but it is impossible for it to have any employees, and there are no longer any beneficiaries who could claim the benefit of the devise.

4. The Omnibus Cable Company was, and the petitioner is, unable to accept or perform the trust attempted to be created by the will.

5. This court is not able to name a trustee by whom the trust could be performed.

"Formerly the doctrine of cy pres was pushed to a most extravagant length; but that is now much restrained. If the charitable object is incapable of taking place at the time of the testator's death, the court is not to look out and substitute another, as they did formerly. Thus, in the case of Wheatley Church, it was pressed that the testator had a rage for building churches anywhere; Lord Kenyon said there was no such object; it was intended only for a particular parish; and, as it could not take effect there, it could not be anywhere else": Attorney General v. Minshull, 4 Ves. Jr. 14.

In 1 Drewry's Reports, pages 642, 644 (High Court of Chancery, 1853), in the case of Clark v. Taylor, where the testator gave "to the treasurer for the time being of the Female Orphan School in Greenwich aforesaid, patronized by Mrs. Enderby, the sum of fifty pounds for the benefit of that

charity," Mrs. Enderby's school was discontinued; and the court held that the legacy lapsed. The vice-chancellor said (page 644): "The question is, whether the gift in this will is to be considered as a gift intended for charitable purposes generally, or whether it was simply intended for the benefit of a particular private charity. Now, there is a distinction well settled by the authorities. There is one class of cases in which there is a gift to charity generally, indicative of a general charitable purpose, and pointing out the mode of carrying it into effect; if that mode fails, the court says the general purpose of charity shall be carried out. There is another class, in which the testator shows an intention, not of general charity, but to give to some particular institution; and then if it fails, because there is no such institution, the gift does not go to charity generally. That distinction is clearly recognized; and it cannot be said that wherever a gift for any charitable purpose fails, it is nevertheless to go to charity."

The chancellor continued, stating that this legacy was intended for a particular institution, and, that institution having gone out of existence, the legacy lapsed and fell into the residue of the estate.

In volume 4 of Equity Cases, 521, 527, in the case of Fiske v. Attorney General, it was held, where testatrix gave one thousand pounds "to the treasurer for the time being of the Ladies' Benevolent Society of Liverpool, to be by him held and applied as part of the ordinary funds of said society," and the Ladies' Benevolent Society of Liverpool, in the year 1864, was dissolved and brought to a close, and the testatrix died March 1, 1866 (page 527), that when a gift is made by will to a charity which has expired, it is as much a lapse as a gift to an individual who has expired, and the legacy of one thousand pounds given to the Ladies' Benevolent Society lapsed and fell into the residue.

In the case of Marsh v. Means, in volume 3, part 1, of The Jurist (New Series), page 790, the testator, Fenner, by his will dated in 1834, gave three hundred pounds "to be applied, after the decease of his wife, for continuing the periodical published under the title of the 'Voice of Humanity,' according to the objects and principles which are set forth in

the prospectus contained in the third number of that publication, the money to be paid to a treasurer to be appointed at a meeting of the association at Exeter Hall.''

The ''Voice of Humanity'' was being published when the will was made. The publication, and the society whose organ it was, subsequently, and before the death of the testator's wife, which occurred in 1855, went out of existence. The chancellor, in deciding the case, said: ''It would, I think, have fallen within the description of charity, if this periodical had been subsisting at the date of the will and afterward ceased. That would be simply a case where, the particular intention having failed, the general intention must be carried out. At the date of the will, however, had the bequest then immediately taken effect, there would have been the probability of getting the same persons together to carry it on who had established it. But the gift, so far from taking effect then, did not even take effect immediately on his decease, but only after his wife's decease. Not only has the periodical itself ceased, but the association, whose organ and property it was, has perished. I must hold that this legacy has lapsed and failed, and cannot be applied cy pres.''

In the case of Crum v. Bliss, 47 Conn. 593, 603, a bequest was made to a charitable corporation located in the state of Pennsylvania. After the will was made, and before the death of the testator, the legislature of Pennsylvania authorized the corporation to transfer its entire property and franchise to a corporation established in the state of New York for the same charitable purpose, which corporation was to become its legal successor, and hold and enjoy all its corporate franchises and powers. The legislature of New York authorized the New York corporation to receive the property and franchise of the Pennsylvania corporation. The transfer was effected, and the New York corporation thereafter carried on, and at the time of the testator's death was carrying on, the same charitable work that had been carried on by the Pennsylvania corporation, using the same means and employing the same agencies. The legacy was a general one, with no directions as to the objects for which or the class of persons for whose benefit the money was to be applied. Held that the legacy lapsed. The court, in its opinion, said that

a case could not be found in all the books where it has been held that one corporation can exercise the discretion confided to another.    To sanction this would be an altering of the testator's will.

In conclusion, in the language of the court in the case of Smith v. Smith, 141 N. Y. 34, 35 N. E. 1075: "The expectations of a testator and his intentions may be two different things.    He never expects that any of the dispositions of his will are void, and he rarely expects that any of the devises and bequests will lapse.    But when he attempts to dispose of all the property he may own at his death, he never intends to die intestate, and he intends that a general residuary clause shall carry whatever, as matter of fact or law, is not otherwise disposed of."

So in this case it may be said that the unexpected to the testator happened.    The corporation to whom the trust was confided and the beneficiaries both went out of existence.    At the time of drawing his will such a thing could not have been reasonably expected to happen.    It occurred too close to his death, and his end came so suddenly and unexpectedly that no change was made in his will; and hence this legacy has lapsed, and goes to the residuary legatees.